IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT DUANE HENNELLY )
)
    Plaintiff, )
)
v. ) No. 3:09-0260
) JUDGE HAYNES
FLORIM, USA INC. )
)
    Defendant. )
)

**MEMORANDUM**

    Plaintiff, Robert Duane Hennelly, filed this action under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq.* and the Tennessee Human Rights Act, Tenn. Code § 4-21-101 *et. seq.* ("THRA") against the defendant Florim, U.S.A., his former employer. Plaintiff's claims are that the Defendant fired him because of his age, 61 and that the Defendant has engaged in a pattern and practice of age discrimination. Plaintiff seeks an injunction for the Defendant's violations of the ADEA and THRA as well as compensatory damages, back pay, front pay, and liquidated damages.

    Before the Court is Defendant's motion for summary judgment, (Docket Entry No. 23), contending, in sum, that because Plaintiff presents direct evidence for his ADEA claim, under Gross v. FBL Fin. Servs. Inc., 129 S.Ct. 2343 (2009), Plaintiff's proof must meet the "but-for" standard to prove a violation of the ADEA. Defendant asserts Plaintiff's proof fails to meet this standard. In response, Plaintiff cites Defendant's managers' numerous comments to establish the Defendant's discriminatory animus towards older workers and Defendant's termination of older workers. (Docket Entry No. 32). Plaintiff also argues that Defendant's stated reasons for firing him are pretextual for age discrimination. Id.

For the reasons set forth below, the Court concludes that Plaintiff has presented sufficient direct evidence to support a judgment on his claims and material factual disputes exist to preclude an award of summary judgment to the Defendant.

### A. Review of the Record[1]

Florim hired Plaintiff in June 2005 as a regional sales manager for its division that manufactures Italian-style ceramic tiles at its facility in Clarksville, Tennessee. (Docket Entry No. 34, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ("Pl. Resp. to Def. Statement") at ¶ 1-2). Plaintiff's job was to create relationships with distributors and customers and inform them of the Defendant's brand and new product launches. Id. ¶ 3. Florim assigned Plaintiff a geographic territory subject to change by his superiors. Id. ¶ 4.

In April 2006, Defendant hired Jim Dougherty, who became its executive vice president of sales in January or February of 2007, a job Dougherty held until April 2008. Id. ¶ 5, 17, 18. Dougherty's supervisory responsibilities included Defendant's sales force and Plaintiff. In November 2007, Dougherty hired Gene Dingman and Ron Spezzaferri as regional vice-presidents, (Docket Entry No. 33, Plaintiff's Response to Defendant's Motion for Summary Judgment, ("Pl. Resp.") at 3-4). Spezzaferri was Plaintiff's immediate superior. (Docket Entry No. 34, Pl. Resp. to Def. Statement, at ¶ 20).

According to Plaintiff, Defendant's managers' repeatedly commented on their desire for a younger sales force and questioned the prior hiring of older employees. In December 2006,

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Because material factual disputes exist, this section does not constitute findings of fact under Fed. R. Civ. P. 56(d).

Mingarelli and Mattioli, Defendant's managers and Dougherty's superiors, met with Dougherty and Mike Rohnert Florim's USA's president and Todd Roherer, Casa Dolce Casa's President. (Docket Entry No. 33, Pl. Resp., at 4). During this meeting, Mingarelli and Mattioli who are in their mid 50s, questioned Dougherty about his hiring of Dingman given his age. Id. Dougherty considered Mingarelli's and Mattioli's comments as objections to this hiring. Id. During this meeting, Mingarelli and Mattioli also told Dougherty that they "wanted a young sales force." (Docket Entry No. 34, Pl. Resp. to Def. Statement, at ¶ 46). Dougherty interpreted this comment to reflect a desire to reduce compensation expenses, rather than an expression of hostility to older workers. Id.

After this meeting, Dougherty received a copy of the following email from Donatella Coccapani, assistant to Carlo Lucchese, vice president of Defendant's Italian branch.

> On clear request of our president, we inform that all new hearings (sic) of people more than 40 years old, have to be submitted to his attention with detailed reasons.
>
> This valid for Florim, CDC Italy and Florim...CDC Usa.

(Id. at ¶ 49). Dougherty interpreted this email as a directive not to hire anyone over 40. (Docket Entry No. 33, Pl. Resp., at 5). Dougherty discussed this email with Mike Rohnert and decided not to follow Coccapani's directive. (Id. at ¶ 52).

Dougherty later met with Mingarelli and Mattioli in Italy, where they informed him that Spezzaferri and Dingman wanted regional managers for their sales force who were "under 40 years old and predominantly female." (Docket Entry No. 33, Pl. Resp., at 5). In 2007, Spezzaferri's hiring profile included the criteria, "young and female," and he so informed Dougherty, Dingman and Steve Molder, a human resources manager. Molder told Spezzaferri "never put that [profile] again in writing." Id. Dingman and Spezzaferri hired three sales

3

persons, Heather Saladin, Marissa Vogl and Michael Panucci who were their 20s or 30s. Id. In April 2007, Spezzaferri met with Rohnert, Dougherty and Dingman at Rohnert's home and Rohnert instructed them to assemble a young, inexpensive sales team. (Docket Entry No. 33, Pl. Resp., at 6). In July 2007, Dougherty traveled to Italy to meet with Mingarelli and Mattioli who were agitated about sales and the age of the sales force. Id. At an October 2007 trade fair, Mingarelli told an audience that the Defendant intended to have a younger sales force. Id. at 6-7. In December 2007, Mingarelli then president of sales and Mattioli, Florim's vice-president of sales traveled to Clarksville to meet with Florim's national sales force. Id. During the meeting, Mingarelli explained his preference for a younger sales force. Id.

In February or March of 2008, Matteo Casolari, who replaced Dougherty, told Dougherty that "he wanted to get rid of the older sales people." (Docket Entry No. 33, Pl. Resp., at 10); (Dougherty Dep. 160, Lines 13-19). Dougherty resigned. Casolari fired Plaintiff in July 2008, and told Spezzaferri that "we had to get rid of [Plaintiff]" for the company to get younger. At the time Casolari was not Plaintiff's supervisor. (Docket Entry No. 34, Pl. Resp. to Def. Statement, at ¶¶ 1, 20).

As to Plaintiff's job performance, Dougherty considered Plaintiff an underachiever in his assigned territory who gave a satisfactory effort, but did not criticize Plaintiff directly. Id. at ¶ 13. Tim Swaw, Defendant's human resources manager recalls Dougherty's statements to that effect. (Docket Entry No. 36, Def. Reply Brief in Support of Motion for Summary Judgment, at 3). Dougherty now insists that he regarded Plaintiff an asset and declined to terminate Plaintiff. (Docket Entry No. 33, Pl. Resp., at 7, 9). When Spezzaferri, Dingman and Rohnert discussed Plaintiff's termination, Spezzaferri defended Plaintiff and Plaintiff was not terminated. Id. at 9. In November 2007, Plaintiff was assigned CMH, a new client and his major client.

Plaintiff contends CMH purchases of approximately $1.3 million were not credited to his sales figures, (Docket Entry No. 33, Pl. Resp., at 8-9), but were credited to Tony Almeida who is in his late 20s. Plaintiff informed Spezzaferri and Dougherty of CMH's omission.

Matteo Casolari, Dougherty's successor considered Defendant's sales force as underperforming and hired Kolt Privett in late April 2008 to supervise Plaintiff and Michael Pannucci. (Docket Entry No. 34, Pl. Resp. to Def. Statement, at ¶ 21). After review of the sales numbers for the Plaintiff's and Pannucci's territories, Privett considered their sales decreasing in his comparison of total sale figures. Id. at ¶ 22. Plaintiff recommended hiring Brad Lawson to increase sales and Defendant hired Lawson on June 16, 2007. Id. at ¶ 23. In late June 2008, Casolari discussed Plaintiff's termination with Tim Swaw due to Plaintiff's lack of improvement. Id. at ¶ 24. Swaw, who is 42, never reviewed Privett's comparison of sales prior to Plaintiff's termination. Swaw agreed and Casolari terminated Plaintiff on June 27, 2008 for poor sales performance. Id. at ¶ 25. Casolari agreed to pay Plaintiff's full salary and automobile allowance until the end of August 2008. Id. at ¶ 27.

Prior to Plaintiff's termination in 2008, Defendant terminated other sales representatives for poor sales performance: Madaline Schwall, Fred Pronger, Ernest Casares and Alexandra Deehan, all of whom were over 40. Deehan, who was fired in November 2007, was under 40. Id. at ¶ 34-35. Between June 2008 and August 2009, Defendant terminated five other sales employees for poor performance, including Plaintiff. Dingman and Plaintiff were over 40. The other three, Vogl, Pannucci and Patrick Johnson were all under 40. Defendant also retained a sales manager over the age of 40, Thomas Spencer, who voluntary resigned in 2009. Id. at ¶¶ 35-38. Gregory Zamecnik, the sales manager, was almost 50 when he was hired. Id. at ¶ 40.

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable

opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations

7

omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
> \* \* \*
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

In Gross v. FBL Financial Services Inc.,129 S.Ct. 2343, 2350 (2009) the Supreme Court restated the standard of proof for ADEA claims based on direct evidence of age discrimination, as the Sixth Circuit stated:

> Gross overrules our ADEA precedent to the extent that cases applied Title VII's burden-shifting framework if the plaintiff produced direct evidence of age discrimination. Gross enunciated the correct standard for ADEA claims as whether the plaintiff has proven "by a preponderance of the evidence ... that age was the 'but-for' cause of the challenged employer decision."

Geiger v. Tower, 579 F.3d 614, 621 (6th Cir. 2009) (internal citations omitted); see also Hunter v. Valley View Lower Schools; 544 F.3d 688, 691 (6th Cir. 2009).

Yet, where Plaintiff's proof of his ADEA claim rests on circumstantial evidence, the burden-shifting model obtains:

> While Gross specifically rejected the burden-shifting framework for claims of direct evidence, as discussed above, the Supreme Court expressly declined to decide whether the *McDonnell Douglas* test applies to the ADEA. In a footnote, the majority noted that it "has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*], utilized in Title VII cases is appropriate in the context." In this circuit, however, while recognizing the differences between Title VII and the ADEA, we have long found the *McDonnell Douglas* framework useful in analyzing circumstantial evidence of ADEA claims. The *McDonnell Douglas* test thus remains applicable law in this circuit, and we are without authority to overrule prior published decisions of our court absent an inconsistent decision of the Supreme Court or an *en banc* reversal. Consequently, we find that the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence.

Id. at 622. (citations omitted).

Here, Plaintiff's proof relies on direct evidence of defendant's managers' discriminatory age-based comments. Under Gross, Plaintiff must establish that his age was the determinative factor in the Defendant's decision to terminate him and he must prove with evidence that his cited poor sales performance is pretextual. "A plaintiff can demonstrate that an employer's explanation is not credible by showing that it (1) has no basis in fact, (2) did not actually motivate the discharge, or (3) was insufficient to warrant discharge." Johnson v. Interstate Brands Co., 331 Fed.Appx. 36, 41 (6th Cir. 2009). See also Schoonmaker v. Spartan Graphics, 595 F.3d 261, 268 (6th Cir. 2010).

The Court deems Plaintiff's direct evidence of Defendant's managers' comments about age could be sufficient to support a judgment on Plaintiff's ADEA claims. Yet, material factual disputes exist on Defendant's reasons for terminating Plaintiff, including whether Plaintiff's sales numbers were fairly computed given the cited omission of Plaintiff's largest client from his sales figures. Plaintiff's proof also includes Casolari's statements to Spezzaferri after Plaintiff's

termination Florim had gotten younger. Whether Mingarelli and Mattioli's comments reflect a desire for a less costly sales force is another material factual dispute.

The Defendant contends that the Italian managers did not have a direct role in Plaintiff's firing and thus, their comments should be disregarded. (Docket Entry No. 24, Def. Memorandum in Support of Motion for Summary Judgment, at 14-16). Yet, discriminatory remarks by an employer's leaders can be corroborative evidence of age discrimination claim because company leaders set corporate policy. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 354-355 (6th Cir. 1998). Plaintiff's proof shows that Mingarelli and Mattioli appeared to have an influential role in the Defendant's business. Finally, "[w]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus." Id. at 355-356.

Although the Defendant argues that Spezzaferri was no longer Plaintiff's supervisor, Hopson v. DaimlerChrysler Corp., 306 F.3d 427 (6th Cir. 2002) states that when a manager with knowledge of company policy describes the circumstances of the adverse employment decision employment decision as motivated by discriminatory animus, such proof can establish pretext. The Defendant asserts that because Spezzaferri was not Plaintiff's supervisor at the time, he should not be considered to be similarly situated as the manager in Hopson. (Docket Entry No. 36, Def. Reply Brief in Support of Motion for Summary Judgment, at 4-6). That conclusion belies the rationale for the decision in Hopson that: "At the summary judgment stage, however, the fact that a...manager with knowledge about the company and the security operations in

particular has testified that he believed discrimination to be involved clearly provides some evidence that this was the case." Id.

For the stated reasons, the Court concludes that the Defendant's motion for summary judgment should be denied.

An appropriate Order is filed herewith.

ENTERED this the ___ day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge